**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

CEQUENT PERFORMANCE PRODUCTS, INC.,
f/k/a CEQUENT TOWING PRODUCTS, INC.,

        Plaintiff,

v.

LET'S GO AERO, INC.,

        Defendant.

---

**COMPLAINT**

---

For its complaint against defendant Let's Go Aero, Inc., plaintiff Cequent Performance Products, Inc. states:

**<u>Summary Of Case</u>**

1.    In January, 2008, plaintiff Cequent Performance Products, Inc. ("Cequent") and defendant Let's Go Aero, Inc. ("LGA") entered into a license agreement whereby LGA purported to grant Cequent an exclusive license to use, make, and sell various transportation-related products that LGA represented as protected by enforceable patents or pending patent applications.

2. In the license agreement, LGA represented and warranted that: (a) the licensed patents and applications are live; and (b) it will continue maintaining the patents and applications.

3. Believing LGA's representations that the patents and applications were active, untarnished, fully enforceable, and not expired nor abandoned, Cequent faithfully paid LGA over $586,000 over the last three years for the license.

4. But Cequent has learned that LGA materially breached its contractual and other obligations to Cequent by, among other things, allowing all of the licensed patents and applications to expire or go abandoned at various times prior to and during the term of the license.

5. LGA's failure to maintain the patents and applications has substantially weakened Cequent's rights to enforce the licensed patents and has seriously diminished the value of the license paid for by Cequent.

6. Despite acknowledging that the patents expired and that the applications went abandoned, LGA refuses to compensate Cequent in any way for the damage that LGA caused, thus necessitating this action.

### The Parties

7. Cequent Performance Products, Inc. is a Delaware corporation with its principal place of business at 47774 Anchor Court West, Plymouth, Michigan 48170. Cequent was formerly known as Cequent Towing Products, Inc.

8.     Let's Go Aero, Inc. is a Colorado corporation with its principal place of business at 3380 North El Paso Street, Colorado Springs, Colorado 80907.

## Jurisdiction And Venue

9.     This Court has subject matter jurisdiction over Cequent's claims under the federal diversity jurisdiction statute, 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     In the event Cequent's Count Nine (Restitution for Overpayment) does not satisfy the $75,000 jurisdictional threshold, this Court has supplemental subject matter jurisdiction over that claim under 28 U.S.C. § 1367 because it is so related to the other claims that together all of the claims form the same case or controversy under Article III.

11.     This Court has personal jurisdiction over LGA because, among other things, it is incorporated in Colorado, has its principal place of business in Colorado, and regularly does business in Colorado.

12.     Venue before this Court is proper under the federal venue statute, 38 U.S.C. § 1391, because LGA resides in Colorado.

13.     This Court also has personal jurisdiction, and venue also is proper, because the license agreement at issue in this case has a forum selection clause in which LGA consented to this Court hearing any dispute "arising out of or related to" the license agreement.  (**Exhibit 1**, License Agreement, ¶ 11).

<u>Relevant Facts</u>

**A.    The Parties' Patent License Agreement Was Supposed To Provide Cequent Key Patent Rights As Represented And Warranted By LGA**

14.    Cequent is a market leader and innovator in the design, manufacture, and marketing of a wide array of products and accessories for light trucks, sport utility vehicles, recreation vehicles, passenger cars, and trailers of all types.  Its products include towing and hitch systems, trailer components and accessories, and electrical, brake, cargo carrying and rack systems.  Cequent draws upon a 100-year heritage of superior towing and trailer brand names, including its Reese®, Fulton®, and Bulldog® brands.

15.    LGA designs, builds, and sells products that LGA calls "gear transport solutions," for attaching things such as bicycles, luggage, camping gear, and sporting equipment to the rear of vehicles.

16.    The parties agreed to a written license agreement (the "Agreement"), which became effective on January 2, 2008.  (**Ex. 1**, Agreement).

17.    Under the Agreement, LGA granted Cequent an "exclusive license" to make, use, and sell products covered by certain LGA patents and patent applications for two years, until December 31, 2009.  (**Ex. 1**, ¶ 1.1).  The Agreement called those patents and applications the "Licensed Technology."  (*Id.*, Recitals).

18.    Exhibit A to the Agreement lists each patent and patent application number subject to the license next to the names of the particular products covered by those patents and applications, including U.S. Patent Nos. 6,409,203; 6,609,725;

6,945,550; 6,042,175; 6,213,539; 6,398,290; and 6,910,609; and U.S. Patent Application Nos.: 11/697,294; 10/604,805; 11/767,166; 11/160,087; and 10/605,776.

19.     Some of the devices covered by the licensed patents, which are illustrative of the technology at issue, are a cargo platform and a trailer as shown below.



Cargo Platform
U.S. Patent No. 6,910,609 (Fig. 29)

Trailer
U.S. Patent No. 6,213,539 (Fig. 9)

20.     In the Agreement, LGA represented and warranted that it was the "sole and exclusive owner of the Licensed Technology." (**Ex. 1**, ¶ 4).

21.     The Agreement obligated LGA to maintain the licensed patents by, among other things:

(a)     Requiring LGA to "take all actions necessary to obtain approvals from the proper governmental authorities or agencies for all obligations and undertakings of LGA under this Agreement" (**Ex. 1**, ¶ 5);

(b)     Requiring LGA to "comply with any and all applicable laws in force in the country of manufacture and sale, including those [sic] may relate to quotations, pricing,

manufacture, labeling, transportation, importation, exportation, licensing, approval, performance and/or certification of the Licensed Product, . . . and such other laws, regulations and standards as may be applicable" (*id.*, ¶ 6);

(c)     Granting Cequent an exclusive license, which necessarily requires LGA to keep the patents unexpired so Cequent could, in fact, exclude others and so Cequent would obtain what it bargained for – the right to use technology which LGA said Cequent could not otherwise use (*id.*, ¶ 1); and

(d)     Requiring LGA to "develop" and to "continue to develop" "all right, title, and interest in and to" the licensed patents and applications (*id.*, Recital, ¶ 1).

22.     The Agreement further obligated LGA to diligently prosecute the licensed patent applications, including paying application fees; keep them clean, active, and not abandoned; and make its best effort to elevate them to issued, enforceable patents by, among other things:

(a)     Requiring LGA to "take all actions necessary to obtain approvals from the proper governmental authorities or agencies for all obligations and undertakings of LGA under this Agreement" (**Ex. 1**, ¶ 5);

(b)     Requiring LGA to "comply with any and all applicable laws in force in the country of manufacture and sale, including those [sic] may relate to quotations, pricing, manufacture, labeling, transportation, importation, exportation, licensing, approval, performance and/or certification of the Licensed Product, . . . and such other laws, regulations and standards as may be applicable" (*id.*, ¶ 6);

(c)     Granting Cequent an exclusive license, which necessarily requires LGA to advance the applications to enforceable patents so Cequent could, in fact, exclude others and so Cequent would obtain what it bargained for – the right to

use technology which LGA said Cequent could not otherwise use (*id.*, ¶ 1); and

(d)     Requiring LGA to "develop" and to "continue to develop" "all right, title, and interest in and to" the licensed patents and applications (*id.*, Recital, ¶ 1).

23.     As consideration for the license, the Agreement required Cequent to pay $400,000 to LGA immediately and then to pay ongoing quarterly royalties of 5% or 7% of Cequent's net sales of licensed products, depending on what customer buys the product.  (**Ex. 1**, ¶ 3.1).

24.     After the two-year exclusivity period expired, on December 31, 2009, the license was to become non-exclusive.  (**Ex. 1**, ¶ 1.2).

**B.     The Parties Amend Portions Of Their Agreement**

25.     On March 16, 2009, the parties executed an amendment to the Agreement (the "Amendment").  (**Exhibit 2**, Amendment).

26.     The Amendment extended the exclusivity period for all of the Licensed Technology until January 2, 2010, at which time four patent applications (the '294, '805, '166, and '776 applications) and three patents (the '203, '725, and '550 patents) would remain exclusive until their expiration, while the remaining licensed patents and applications would become non-exclusive until their expiration.  (**Ex. 2**, ¶ 1.1-1.2).

27.     The Amendment obligated Cequent to pay another $50,000 over one year, plus the previously agreed to royalty payments being subject to new escalating yearly minimum amounts.  (**Ex. 2**, ¶ 1.1-1.3, Ex. C).

28.    The Agreement continued to govern the license subject to the changes affected by the Amendment.

**C.    LGA's Ongoing Breaches Of The Agreement And Amendment**

29.    After executing the Agreement, Cequent began discovering that LGA repeatedly had breached the Agreement and Amendment by allowing each of the licensed patents and applications to expire or abandon.

30.    Specifically, at the time the parties executed the Agreement, LGA allowed at least four of the licensed applications (the '294, '805, '166, and '776 applications) to abandon because LGA had not paid application fees or were expressly abandoned by LGA.  Also LGA allowed at least two of the licensed patents (the '539 and '290 patents) to expire because LGA had not paid maintenance and filing fees.

31.    LGA did not disclose to Cequent that at least two of the patents expired and at least four of the applications abandoned.  Instead, LGA affirmatively represented to Cequent that those patents and applications were neither expired nor abandoned by expressly representing and warranting that it was the "sole and exclusive owner of the Licensed Technology."  (*See* **Ex. 1**, ¶ 4).

32.    By allowing these patents and applications to expire, they became part of the public domain so that LGA was not the "sole and exclusive owner."

33.    Since June, 2008, Cequent also has discovered that, after the Agreement commenced, LGA has allowed the other licensed patents and application

to expire or go abandoned by not paying required fees in violation of the Agreement. Specifically, LGA allowed the '175, '539, '290, and '609 patents to expire and the '087 application to abandon.

34. LGA has tried to cover up its breaches by petitioning the United States Patent and Trademark Office (the "USPTO") to revive some of the patents and applications.

35. In reviving one of the patents, the '175 patent, LGA's Marty Williams submitted a declaration to the USPTO in which he swore that LGA missed payments due for various patents and applications because LGA's patent attorney, Glenn Webb, had neglected to inform LGA when payment was due.

36. Mr. Webb, however, denied Mr. Williams' accusation and submitted a declaration in which he swore that Mr. Williams had consciously decided to abandon the '175 and '290 patents, but that there must have been a "miscommunication" between him and his client on that issue.

37. At a minimum, that material dispute and the lapsing of the patents weakens the enforceability of the licensed patents by exposing them to potential intervening rights and inequitable conduct defenses by accused infringers.

38. Cequent further has discovered that despite granting an "exclusive" license, LGA made, used, and sold licensed products during the exclusivity period and that it licensed or otherwise allowed others to do so as well. For example, Cequent discovered that, in March 2008, LGA allowed a company called "Cummins

Onan" to sell a hitch-mounted generator that LGA called a "Juice Box," which LGA had represented as covered by the '087 application and subject to the exclusive license.

39. To date, Cequent has paid LGA over $586,000 – in lump sum and royalty payments – for a license based on expired patents and abandoned applications that LGA was obligated to maintain active.

40. By failing to fulfill its contractual obligations, representations, and warranties, and by failing to return money owed to Cequent, LGA has directly and proximately caused monetary harm to Cequent.

41. Ironically, on October 4, 2010, LGA sent a letter to Cequent that accused it of breaching the Agreement and Amendment by failing to make royalty payments. The letter granted Cequent 60 days to cure the alleged breach.

42. On December 2, 2010, under protest, Cequent paid all of the royalty payments that would have been due to LGA had it not breached the Agreement and Amendment and had it not otherwise withheld money owed to Cequent. Although Cequent was not obligated to make that payment, it cured the supposed breach that LGA alleged.

43. Cequent denies LGA's allegation that it breached the Agreement or the Amendment, and Cequent made the "cure" payment solely to protect its rights under the applicable agreements and the law.

44.     Despite Cequent's repeated demands that LGA compensate Cequent for the harm LGA caused, it steadfastly has refused to do so.

**Count One**
*Breach of Contract*

45.     Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

46.     LGA materially breached the Agreement and Amendment by, among other things:

(a)     Representing and warranting that it was the "sole and exclusive owner" of the licensed patents and applications when, in fact, some of the patents and applications were abandoned or expired at the time the Agreement commenced;

(b)     Allowing the other licensed patents and applications to expire or go abandoned after the Agreement commenced;

(c)     Making, using, and selling licensed products during the exclusivity period and licensing or otherwise allowing others to do so as well; and

(d)     Accepting and retaining payments from Cequent for the sale of products that were not covered by any of the licensed patents or applications.

47.     Cequent fulfilled all of its obligations under the Agreement and Amendment.

48.     As a direct and proximate result of LGA's material contract breaches, Cequent has been damaged in an amount exceeding $75,000.

## Count Two
### *Promissory Estoppel*

49.     Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

50.     In the Agreement and Amendment, LGA promised that it was the "sole and exclusive owner" of the patents and applications; that they were clean, active, fully enforceable, and not expired nor abandoned; and that LGA would keep them in that state throughout the duration of the license.

51.     Upon information and belief, at the time it made its promise, LGA knew that some of the patents and applications were expired or abandoned and it had a specific intent not to keep the other patents and applications in an unexpired and non-abandoned state.

52.     Cequent relied on LGA's promise to its detriment in a number of ways, but especially by entering into the Agreement and Amendment and by paying the money that it believed was due to LGA under those agreements.

53.     Cequent's reliance on LGA's promise was reasonable and foreseeable, especially because, upon information and belief, LGA made the promise with the specific intent of inducing Cequent to rely upon it and to pay LGA money.

54.     LGA did not fulfill its promise.

55.     By relying upon LGA's unfulfilled promise, LGA has been damaged in an amount exceeding $75,000.

## **Count Three**
*Breach of Implied Duty of Good Faith and Fair Dealing*

56. Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

57. The Agreement and Amendment both contained an implied duty of good faith and fair dealing.

58. LGA breached its duty of good faith and fair dealing by granting a license to patents and applications that were expired or abandoned and by failing to keep the other licensed patents and applications clean, active, fully enforceable, and not expired nor abandoned.

59. LGA further breached its duty of good faith and fair dealing by retaining the royalties that Cequent paid for sales of products not covered by any of the licensed patents or applications.

60. LGA further breached its duty of good faith and fair dealing by making, using, and selling licensed products during the exclusivity period and licensing or otherwise allowing others to do so as well.

61. As a direct and proximate result of LGA's breaches of the implied duty of good faith and fair dealing, Cequent has been damaged in an amount exceeding $75,000.

**Count Four**
*Rescission and Restitution*

62.    Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

63.    The Agreement and Amendment are void, invalid, and rescindable for one or all of the following reasons:

(a)    By the Agreement's own terms, it "shall expire simultaneously with the cancellation or expiration of the patents covering the Licensed Technology." (Agreement ¶ 2). As to the patents and applications that were expired or abandoned at the time the Agreement commenced, the Agreement was void *ab initio*. As to the other patents and licenses, the Agreement expired upon their respective expirations or abandonments, which occurred prior to the normal, expected expiration of each patent or application.

(b)    The Agreement and Amendment are unlawful, invalid, and void to the extent they require Cequent to pay to use technology in the public domain; technology subject to expired, abandoned, or unenforceable patents or applications; or technology otherwise not fully protected by the Patent Act. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369 (Fed. Cir. 2005); *Brulotte v. Thys Co.*, 379 U.S. 29 (1964).

(c)    LGA failed to provide to Cequent an exclusive license to patents and applications that were truly exclusive, clean, active, fully enforceable,

and not expired nor abandoned, which was the substance of what Cequent contracted for and paid to obtain.

(d)     To the extent LGA denies that it knew that the patents and applications expired or went abandoned, the doctrine of mutual mistake invalidates the Agreement and Amendment because Cequent mistakenly believed all of the patents and applications were clean, active, fully enforceable, and not expired nor abandoned.

64.     Cequent asks that the Court rescind the Agreement and Amendment accordingly and order LGA to pay the corresponding amount of restitution due to Cequent, which amount exceeds $75,000.

### Count Five
*Unjust Enrichment*

65.     Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

66.     By obtaining money from Cequent under a void, invalid, and rescinded Agreement and Amendment, LGA obtained and retained money to which it is not entitled and which rightfully belongs to Cequent.

67.     By obtaining money from Cequent by licensing patents and applications that were either expired, abandoned, or not fully enforceable or that did not cover the products on which Cequent paid royalties, LGA obtained and retained money to which it is not entitled and which rightfully belongs to Cequent.

68. LGA has not compensated Cequent for the money that LGA improperly retained, despite justice and equity requiring it to do so.

69. LGA's receipt and retention of money to which it is not entitled and that rightfully belongs to Cequent is unjust enrichment.

70. As a direct and proximate result of LGA's unjust enrichment, Cequent has suffered damages in an amount exceeding $75,000.

## Count Six
*Conversion*

71. Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

72. By obtaining money from Cequent under a void, invalid, and rescinded Agreement and Amendment, LGA obtained and retained money to which it is not entitled and which rightfully belongs to Cequent.

73. Similarly, by obtaining money from Cequent by licensing patents and applications that were either expired, abandoned, or not fully enforceable or that did not cover the products on which Cequent paid royalties, LGA obtained and retained money to which it is not entitled and which rightfully belongs to Cequent.

74. By exercising dominion over money that belongs to Cequent, and by refusing to return that money to Cequent, LGA is liable to Cequent for conversion in an amount exceeding $75,000.

## **Count Seven**
### *Fraudulent Inducement and*
### *Negligent Misrepresentation*

75. Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

76. LGA misrepresented to Cequent in the Agreement that all of the licensed patents and applications were fully enforceable, unexpired, and not abandoned and that LGA would keep them in that state throughout the duration of the license.

77. Upon information and belief, LGA made that misrepresentation with knowledge of its falsity and with a present intent not to keep the patents and applications in a fully enforceable, active state.

78. Cequent did not know that LGA's misrepresentation was false and, in fact, believed and relied upon it by entering into the Agreement and Amendment.

79. Upon information and belief, LGA made the misrepresentation to Cequent with the specific intent of inducing Cequent to rely upon it, to enter into a licensing agreement with LGA, and to make significant monetary payments to LGA under that agreement.

80. To the extent LGA denies that it knew the patents and applications were expired and abandoned, it reasonably should have known, and therefore LGA is liable for negligent misrepresentation for failing to exercise reasonable care or

competence to determine the status of the patents and applications and to truthfully and timely communicate their status to Cequent.

81.      As a direct and proximate result of LGA's fraudulent inducement and negligent misrepresentation, Cequent has suffered damages in an amount exceeding $75,000.

**Count Eight**
*Intentional and Negligent Non-Disclosure*

82.      Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

83.      At the time the parties entered into the Agreement and Amendment and at other times during the term of those agreements, LGA knew or should have known that particular patents and applications had expired or had gone abandoned, which are material facts that in equity and good conscience LGA was required to disclose to Cequent.

84.      LGA knowingly or negligently failed to disclose those material facts to Cequent, which was ignorant of those facts.

85.      LGA specifically intended for Cequent to rely upon the materially incomplete facts so it would enter into the Agreement and Amendment and make payments to LGA under those agreements, or it reasonably should have foreseen that occurring.

86.      LGA's failure to disclose material facts to Cequent induced it to enter into the Agreement and Amendment and to make payments to LGA under those

agreements, all of which it would not have done had LGA disclosed all of the material facts.

87. As a direct and proximate result of LGA's intentional and negligent non-disclosure, Cequent has suffered damages in an amount exceeding $75,000.

## Count Nine
*Restitution for Overpayments*

88. Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

89. Cequent paid LGA royalties for the sales of certain products that Cequent believed were due under the Agreement and Amendment, but that were not due because none of the licensed patents or applications covered those particular products.

90. By obtaining and retaining the overpayments to which it is not entitled, LGA is liable to Cequent for restitution in an amount exceeding $25,000.

## Count Ten
*Declaratory Relief*

91. Cequent incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

92. In accordance with the Declaratory Judgment Act, 28 U.S.C. 2201, Cequent requests that the Court declare:

(a) That the Agreement and Amendment are void, invalid, and unlawful, in whole or in part;

(b) That LGA materially breached the Agreement and Amendment; and

(c) That Cequent has not materially breached the Agreement and Amendment.

## **Prayer for Relief**

**WHEREFORE**, Cequent prays for judgment against LGA as follows:

(A) Compensatory damages in excess of $75,000, with the exact amount to be determined at trial;

(B) Restitution damages in excess of $75,000, with the exact amount to be determined at trial;

(C) Punitive damages;

(D) Attorneys' fees;

(E) Pre-judgment and post-judgment interest;

(F) Costs of the action;

(G) Declaratory relief as requested in Count Ten; and

(H) Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

Dated:  December 1, 2010

     s/ Andrew J. Petrie
Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400 S
Denver, Colorado 80202
T 303.626.7100
F 303.626.7101
apetrie@featherstonelaw.com

and

David B. Cupar
   *dcupar@mcdonaldhopkins.com*
Matthew J. Cavanagh
   *mcavanagh@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
T 216.348.5400
F 216.348.5474

*Counsel for*
*Cequent Performance Products, Inc.*

**<u>Jury Demand</u>**

Plaintiff Cequent Performance Products, Inc. hereby demands a jury trial for all issues so triable.

__ s/ Andrew J. Petrie _____
*Counsel for*
*Cequent Performance Products, Inc.*
